IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARISA ELSKAMP, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 09-4894 |
| PENN-DELCO SCHOOL DISTRICT *et al.*, | : |
| Defendants. | : |

**MEMORANDUM**

YOHN, J.                                                                                               May 18, 2011

Plaintiff, Marisa Elskamp, filed this employment-discrimination and retaliation action against the Penn-Delco School District and several of its employees (collectively, the "Penn-Delco defendants") and against the Rose Tree Media School District and several of its employees (collectively, the "Rose Tree defendants"). Now pending are the motions filed by the Penn-Delco defendants and the Rose Tree defendants for summary judgment under Federal Rule of Civil Procedure 56.[1] For the reasons set forth below, I will grant the defendants' motions.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

Elskamp was hired by the Penn-Delco School District as a school-bus driver in 1993. (Penn-Delco Defs.' Statement of Uncontested Facts ("Penn-Delco Facts") ¶ 3.) After her request

---

[1] Elskamp filed a cross-motion for partial summary judgment, but in an order dated February 1, 2011, I struck her motion as untimely.

[2] Except as otherwise noted, the following facts are undisputed.

for medical leave in the spring of 2007 was denied, she refused to return to work. She was ultimately terminated on June 27, 2007. (*Id.*; Penn-Delco Defs.' Mot. for Summ. J. Exs. N–R.)

On August 10, 2007, Elskamp filed a charge of employment discrimination and retaliation with the Pennsylvania Human Relations Commission ("PHRC"); the charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Penn-Delco Facts ¶ 4.)

On August 13, 2007, Elskamp went to the Rose Tree Media School District seeking employment as a bus driver. The person responsible for hiring bus drivers was not there at the time, but she spoke with a mechanic, who gave her a job application. (Rose Tree Defs.' Statement of Uncontested Facts ("Rose Tree Facts") ¶ 10.) Elskamp completed the application and mailed it, along with a cover letter, to Bonnie Kinsler, the director of transportation at the Rose Tree Media School District, on August 14. (*Id.* ¶ 14; Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. Ex. 15, Reproduced Record in the Commonwealth of Pennsylvania ("Reproduced Record").)

Kinsler called Elskamp on October 25, 2007, and arranged for Elskamp to meet with her the next day. (Rose Tree Facts ¶ 15–16.) During the interview, Kinsler gave Elskamp the paperwork that she would need for her background checks and asked her to return the following week with the completed paperwork and a money order for the background checks. (*Id.* ¶ 22; Rose Tree Defs.' Mot. for Summ. J. Ex. A, Dep. of Marisa Elskamp (Sept. 13, 2010) ("Elskamp Dep.") at 46:7–10, 48:19–20.) Later that evening, however, Kinsler called Elskamp and told her that the human-resources department had just told her that she had already reached her hiring limit and that she would not be able to hire any more drivers. Kinsler apologized and said that

she would keep Elskamp's application on file. (Rose Tree Facts ¶ 24; Elskamp Dep. at 58:8–21.)

In July 2008, Elskamp went back to see Kinsler and asked whether the school district was hiring bus drivers for the upcoming school year. (Rose Tree Facts ¶ 26.) Elskamp testified that Kinsler told her, "We just hired our last four." (Elskamp Dep. at 154:19–20.) Elskamp reminded Kinsler that she had said that she would keep Elskamp's application on file and asked why she did not call her (Elskamp) before hiring other drivers. (*Id.* at 154:21–23.) Elskamp testified that Kinsler then said that Al Groer, the director of transportation for the Penn-Delco School District, and a female employee at the school district, whose name Kinsler did not remember, had told her that Elskamp was a "bad employee" and was not a "team player." (*Id.* at 51:1–3, 59:21–61:3.) Elskamp testified that she then asked Kinsler, "Are you sitting there telling me that I can never work for Rose Tree, ever?" to which Kinsler replied, "Yes; that's what I'm telling you." (*Id.* at 61:20–24.)

Elskamp filed this action on October 23, 2009, and filed an amended complaint on January 4, 2010, alleging claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; 42 U.S.C. § 1983; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951 *et seq.* Elskamp brought five counts. In count I, brought under Title VII, she alleged that the Penn-Delco defendants took certain adverse actions against her, including firing her, opposing her claim for unemployment compensation, and interfering with her prospective employment ("blackballing" her) in retaliation for her speaking out against discrimination and for her filing of a discrimination complaint with the PHRC. She further alleged that the Rose Tree defendants, after speaking with Penn-Delco School District

3

employees, retaliated against her for filing the PHRC complaint by refusing to hire her as a school-bus driver. In count IV, she brought a First Amendment retaliation claim, asserting that the Penn-Delco defendants and the Rose Tree defendants were liable for their retaliatory conduct under section 1983. In counts II and III, brought under Title VII and the ADEA, she alleged that the defendants had discriminated against her on the basis of her gender, race, national origin, and age. And finally, in count V, she asserted discrimination and retaliation claims against the defendants under the PHRA.

The Penn-Delco defendants and the Rose Tree defendants filed motions to dismiss the amended complaint. After hearing oral argument on the motions on July 29, 2010, and after holding a hearing on August 24, 2010, I dismissed many of Elskamp's claims. *See* Order, Aug. 2, 2010 (document no. 30); Order, Aug. 24, 2010 (document no. 40). The following claims remain:

- Count I (Title VII retaliation), against the Penn-Delco School District only, alleging that the school district retaliated against Elskamp for filing a PHRC complaint by telling the Rose Tree defendants that Elskamp was a "bad employee" and was not a "team player."

- Count IV (First Amendment retaliation under section 1983), against the Penn-Delco defendants and the Rose Tree defendants, alleging that the Penn-Delco defendants retaliated against Elskamp for filing a PHRC complaint by telling the Rose Tree defendants that Elskamp was a "bad employee" and was not a "team player," and alleging that the Rose Tree defendants retaliated against Elskamp by not hiring her as a bus driver.

- Count V (PHRA retaliation), asserting the same claim as under count I, but against

4

the individual Penn-Delco defendants as well as the Penn-Delco School District.

Both the Rose Tree defendants and the Penn-Delco defendants have now moved for summary judgment on the remaining claims.

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that it is entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*," *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted), offering concrete evidence supporting each essential element of its claim, *see Celotex*, 477 U.S. at 322–23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and may not "rely merely upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). By the same token, "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would

5

be compelled to find its way on the facts needed to rule in its favor on the law." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted).

When evaluating a motion for summary judgment, the court "is not to weigh the evidence or make credibility determinations." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (internal quotation marks omitted). "[A]n inference based upon a speculation or conjecture," however, "does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III. DISCUSSION

Elskamp alleges that both the Penn-Delco defendants and the Rose Tree defendants retaliated against her for filing a discrimination complaint against the Penn-Delco School District.

### A. The Penn-Delco Defendants

Asserting claims against the Penn-Delco defendants under Title VII and the PHRA, as well as under section 1983, Elskamp alleges that Al Groer, the director of transportation for the Penn-Delco School District, and an unnamed female employee at the school district told Kinsler, the director of transportation for the Rose Tree Media School District, that Elskamp was a "bad

6

employee" and was not a "team player," because she had filed a PHRC complaint.³

### 1. Retaliation under Title VII and the PHRA

Courts generally analyze Title VII and PHRA retaliation claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).⁴ A plaintiff must first establish a prima facie case of retaliation: she must show that (1) she engaged in protected activity; (2) her employer took a materially adverse action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).⁵ If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the

---

³ In her brief, Elskamp discusses other actions taken by the Penn-Delco defendants, allegedly in retaliation for protected conduct that she engaged in before her termination. Because the August 2, 2010 order clearly dismissed any claims related to protected activity that Elskamp engaged in before her termination, I will not discuss these other alleged adverse actions.

⁴ The Third Circuit "has stated that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Slagle v. County of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006). Here, the only relevant difference is that an individual employee may potentially be held liable under the PHRA, *see Dici v. Pennsylvania*, 91 F.3d 542, 552–53 (3d Cir. 1996) (discussing provision of the PHRA that provides for liability of an individual employee for "aiding and abetting . . . unlawful discriminatory practices"), but not under Title VII, *see Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996) (en banc) (holding that individual employees may not be held liable under Title VII).

⁵ Although the court in *Moore* described the second element as an "adverse *employment* action," 461 F.3d at 340 (emphasis added), the court acknowledged that under the standard articulated by the Supreme Court in *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53 (2006), a retaliatory action need not be employment-related to be actionable under Title VII, *see* 461 F.3d at 341. To establish the second element of the prima facie case, a plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68).

7

adverse action, and if it does so, the plaintiff must convince the factfinder both that the defendant's proffered explanation was false and that retaliation was the real reason for the adverse employment action. *See id.* at 342.

The Penn-Delco defendants contend that they are entitled to summary judgment on Elskamp's Title VII and PHRA retaliation claims because Elskamp cannot establish a prima facie case of retaliation. They do not dispute that Elskamp engaged in protected activity when she filed her PHRC complaint,[6] but they argue that she has failed to establish any facts that show either that they took an adverse action against her or, to the extent that they did take an adverse action, that a causal link exists between her protected activity and that adverse action. Because I agree that Elskamp has failed to present sufficient evidence to establish a prima facie case of retaliation, I will grant the Penn-Delco defendants' motion for summary judgment as to Elskamp's Title VII and PHRA retaliation claims.

The Penn-Delco defendants argue first that Elskamp has not proffered sufficient evidence to establish that they took an adverse action against her. They assert that she has offered only her own testimony that Kinsler told her that Groer and an unnamed female employee of the Penn-Delco School District said that she was a "bad employee" and "wasn't a team player." (*See*

---

[6] Under Title VII's antiretaliation provision, the filing of a discrimination charge is protected activity. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful employment practice by this subchapter, or because he has *made a charge*, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (emphasis added)). Although the filing of a facially invalid charge is not protected activity, "[p]rotection is not lost merely because an employee is mistaken on the merits of his or her claim." *Slagle*, 435 F.3d at 268.

Elskamp Dep. at 51:1–7, 53:18–54:6.)[7] Moreover, they argue, Elskamp's testimony is contradicted by the affidavits of Groer and Christina (Tina) Scott, an administrative assistant in the Penn-Delco School District's Transportation Department, as well as by Kinsler's testimony. In her affidavit, Scott stated that Kinsler had called the transportation department to verify Elskamp's employment with the Penn-Delco School District. Scott stated that she spoke with Kinsler and told her only that Elskamp had previously been employed by the school district as a school-bus driver. (Penn-Delco Defs.' Mot. for Summ. J. Ex. F, Aff. of Christina Scott (Nov. 24, 2010) ("Scott Aff.") ¶¶ 2–3.) In his affidavit, Groer stated that he has never spoken to Kinsler about Elskamp. He explained that he has been informed that Kinsler called his office to verify Elskamp's employment with the Penn-Delco School District, but he asserted that he did not speak with her when she called. (*Id.* Ex. D, Aff. of Al Groer (Nov. 24, 2010) ("Groer Aff.") ¶¶ 2–3.) And Kinsler testified that she called the Penn-Delco School District and spoke with Scott, who confirmed that Elskamp had worked there and that she no longer worked there. (Rose Tree Defs.' Mot. for Summ. J. Ex. B, Dep. of Bonnie Kinsler (Aug. 20, 2010) ("Kinsler Dep.") at 22:11–14.) Kinsler further testified that Scott was the only person from the Penn-Delco School

---

[7] The Penn-Delco defendants do not dispute that Groer's statements, if he in fact made them, would constitute an adverse action for purposes of Title VII. In *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the Supreme Court held that former employees are within the scope of Title VII's antiretaliation provision and thus that a former employee could bring suit against his former employer for giving him a negative reference in retaliation for his having filed an EEOC discrimination charge. *See also Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006) (citing *Robinson* and asserting that "it is well established that a former employee . . . can assert a claim that she was given negative references in retaliation for engaging in protected activity); *cf. EEOC v. L.B. Foster Co.*, 123 F.3d 746 (3d Cir. 1997) (holding that plaintiff had offered sufficient evidence to establish a prima facie case of retaliation under Title VII where plaintiff claimed that former supervisor refused to provide a reference for her but had provided references for other former employees).

District with whom she spoke and that she never spoke with Groer about Elskamp. (*Id.* at 36:25–37:5.)

Elskamp's testimony about Kinsler's statements regarding her conversation with Groer and an unnamed female employee at the Penn-Delco School District is hearsay—at least to the extent that it is offered against the Penn-Delco defendants—and thus may not be considered on summary judgment. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").[8] And without Elskamp's testimony there is no evidence that the Penn-Delco defendants took an adverse action against Elskamp, and she thus cannot establish a prima facie case of retaliation.

The Penn-Delco defendants next argue that even if there were an adverse action, Elskamp has proffered no evidence to establish a causal connection between her protected activity and that adverse action. The Penn-Delco defendants argue that there is no evidence that the Rose Tree

---

[8] Elskamp's testimony is "double hearsay," or "hearsay within hearsay," because it describes a statement that Kinsler made to Elskamp about a statement that Groer allegedly made to Kinsler. Elskamp's testimony may be considered on summary judgment only if both layers of hearsay would be admissible at trial. *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). Groer's alleged statement to Kinsler would likely qualify as an admission by a party-opponent—which, under Rule 801(d)(2), is not hearsay—and would thus be admissible against the Penn-Delco defendants. *See* Fed. R. Evid. 801(d)(2) (providing, in relevant part, that a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). But Elskamp is testifying as to Kinsler's repetition of that alleged statement, and because it is offered to prove that Groer made negative comments about Elskamp—that is, it is offered to prove the truth of the matter asserted—it is hearsay and would not be admissible at trial against the Penn-Delco defendants.

Media School District failed to hire her because of anything that they said. But this argument misses the mark, since the adverse action at issue here is the negative reference that they allegedly gave Elskamp, not the Rose Tree Media School District's failure to hire Elskamp. *See EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 n.4 (3d Cir. 1997) (in a Title VII retaliation case in which former supervisor refused to provide reference for plaintiff but gave references for other former employees, explaining that "[t]he issue of whether [the prospective employer] would have hired [plaintiff] is not at all relevant to whether [defendant] is liable for retaliatory discrimination").[9] They also seem to argue that to the extent that they said anything negative about her, it was merely because she was not a team player, not because she filed a discrimination complaint. But as Elskamp argues, a reasonable juror could interpret the defendants' comments to mean that she was not a team player *because* she filed a discrimination complaint.

The better argument is that Elskamp has not met her burden of showing a causal connection, because she has not produced any evidence that either Groer or Scott was aware that Elskamp had filed a PHRC complaint. Indeed, both Groer and Scott stated in their respective affidavits that they were unaware that Elskamp had filed a discrimination complaint against the Penn-Delco School District. (*See* Groer Aff. ¶ 4; Scott Aff. ¶ 4.) And Elskamp testified that

---

[9] The argument that the Rose Tree Media School District would not have hired Elskamp even in the absence of the Penn-Delco defendants' alleged adverse action goes to the issue of the appropriate remedy, not the liability of the Penn-Delco defendants. *See Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (cited with approval in *L.B. Foster*, and distinguishing between a violation of Title VII and the availability of remedies); *Smith v. Secretary of Navy*, 659 F.2d 1113, 1120 (D.C. Cir. 1981) (cited with approval *L.B. Foster*, and asserting that "[a]n illegal act of discrimination—whether based on race or some other factor such as a motive of reprisal—is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of [damages].").

Kinsler did not tell her the reasons Groer gave, if any, for saying that Elskamp was a bad employee. (Elskamp Dep. at 52:4–6.) There is evidence that Deborah Albence, the director of human resources for the Penn-Delco School District, was aware of the complaint: Albence verified the Penn-Delco School District's answer to the PHRC complaint.[10] But Elskamp has offered no evidence to suggest that Kinsler ever spoke with Albence.[11]

Elskamp contends that Groer's affidavit was "self-serving." But Elskamp has not provided any affirmative evidence to suggest that any of the Penn-Delco defendants who spoke with Kinsler was aware of Elskamp's PHRC complaint at the time. As the Third Circuit has explained, "[i]t is by now axiomatic that a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit [as to a material fact]." *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir.1998) (internal quotation marks omitted). "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257. Here, Elskamp has pointed to no affirmative evidence in the record to even suggest that Groer knew about her PHRC complaint. Elskamp's counsel complains that "[p]laintiff has not been able to depose Groer or Albence," and that the defendants "moved for summary judgment near immediately after the Court resolved the

---

[10] The answer to the PHRC complaint is not dated, and there is nothing else in the record suggesting when Albence became aware of the complaint and whether she was aware of it at the time that Kinsler spoke with someone from the Penn-Delco School District.

[11] Since the Penn-Delco defendants did not clearly make this argument, if Elskamp can point to any evidence *in the record* that Groer or Scott knew of the PHRC complaint or that Albence spoke to Kinsler, I will consider it on a motion for reconsideration.

12

pleading issues" (Pl.'s Resp. to Penn-Delco's Facts ¶ 25), but Elskamp was given ample opportunity to conduct discovery, and in any event, that is not an appropriate argument at this juncture.[12]

Elskamp suggests that the temporal proximity between her filing of the PHRC complaint and the Penn-Delco defendants' alleged statements to Kinsler provides an adequate basis for a jury to find the requisite causal connection between her protected activity and the alleged adverse action. But such temporal proximity is irrelevant to the extent that the Penn-Delco defendants were unaware of the PHRC complaint, and temporal proximity cannot be used to show that a defendant was aware of protected conduct in the first place. *See Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (holding that defendant was entitled to judgment as a matter of law on First Amendment retaliation claim where township commissioners asserted that they were unaware of plaintiff's protected activity and plaintiff pointed to no evidence to the contrary, except temporal proximity between protected activity and adverse action); *see also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999) (affirming grant of summary judgment on Title VII retaliation claim where there was no evidence that those who made decision to fire plaintiff were aware of his protected activity).

Because Elskamp has not provided sufficient evidence to establish a prima facie case of retaliation under Title VII or the PHRA, I will grant the Penn-Delco defendants' motion for summary judgment as to the these claims in counts I and V.

---

[12] According to the scheduling order issued on July 22, 2010, the discovery deadline was November 1, 2010, and the deadline for dispositive motions was December 1, 2010. The defendants filed their motions for summary judgment on December 1, 2010.

## 2. First Amendment Retaliation under Section 1983

Elskamp also brings a First Amendment retaliation claim against the Penn-Delco defendants under section 1983.

To state a First Amendment retaliation claim, a plaintiff must allege that her activity is protected by the First Amendment and that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *See Ambrose*, 303 F.3d at 493. Even if the plaintiff establishes these two elements, the defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity. *See id.*

Because, as discussed in connection with Elskamp's Title VII and PHRA retaliation claims, Elskamp has not provided sufficient evidence to demonstrate a causal connection between her filing of the PHRC complaint and the alleged adverse action—or even that the Penn-Delco defendants took an adverse action against her—her section 1983 retaliation claim against the Penn-Delco defendants must similarly fail.[13] Accordingly, I will grant summary judgment in

---

[13] The Penn-Delco defendants concede that Elskamp's filing of the PHRC complaint is protected by the First Amendment. Generally, in order to establish that activity is protected by the First Amendment, a plaintiff must first demonstrate that the activity addressed a "matter of public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). The Third Circuit has held, however, that where the activity implicates the petition clause, rather than the free-speech clause, of the First Amendment, this "public concern" requirement does not apply. *See San Filippo v. Bongiovanni*, 30 F.3d 424, 435–43 (3d Cir. 1994). Rather, a plaintiff need only show that her "petition" was not a "sham." *See id.* at 443.

Nor do the Penn-Delco defendants dispute that Groer's statements to Kinsler, if he in fact made them, would provide a basis for asserting a retaliation claim. "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted).

favor of the Penn-Delco defendants on this section 1983 claim in count IV.[14]

B.     The Rose Tree Defendants: First Amendment Retaliation

Elskamp brings a First Amendment retaliation claim against the Rose Tree defendants under section 1983, alleging that they retaliated against her—for filing a discrimination complaint against the Penn-Delco School District—by not hiring her as a bus driver in August

---

[14] Even if Elskamp could demonstrate that her filing of a PHRC complaint was a substantial or motivating factor in the negative comments allegedly made about her, Albence would still be entitled to summary judgment in her favor because Elskamp has not demonstrated that Albence individually participated in the alleged retaliatory conduct. To impose liability under section 1983 against the individual Penn-Delco defendants, Elskamp "must show that each [defendant] individually participated in the alleged constitutional violation or approved of it." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). The only actions that Elskamp expressly asserts that Albence participated in are the decisions to terminate Elskamp and to oppose her claim for unemployment compensation. But any claims that Elskamp might have had with respect to such actions have been dismissed and do not form the basis for her remaining section 1983 claim against the Penn-Delco defendants.

The Penn-Delco School District similarly argues that even if Elskamp could satisfy her burden of demonstrating that her protected activity was a substantial or motivating factor in the alleged retaliatory action, her section 1983 claim against it must fail as a matter of law. Although a municipality and other local governmental units may be subject to liability under section 1983, such liability may not be predicated on the theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). A municipality cannot be held liable under section 1983 "unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting Monell, 436 U.S. at 694). Elskamp asserts that under certain circumstances, municipal liability may be imposed for a single decision by a municipal policymaker. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Thus the initial question is whether the Penn-Delco School District administrators responsible for the alleged retaliatory conduct "can be considered policymakers for the school district such that their decisions may rightly be said to represent the official policy of the [Penn-Delco School District] subjecting it to liability under [section] 1983." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989). Whether those administrators "speak with final policymaking authority for the [school district] concerning the action alleged to have caused the particular constitutional . . . violation at issue" is a question of state (or local) law. *Id.* at 737. Elskamp asserts that Groer is the transportation director and that he acts with the authority of the school board. But neither side expressly discusses whether Groer has any policymaking authority.

15

2008.

The Rose Tree defendants do not dispute that Elskamp engaged in protected activity. But they argue that Elskamp cannot demonstrate that her protected activity had any role in the decision not to hire her. And in any event, they argue, they would have taken the same action absent her protected activity. Because I agree that Elskamp has failed to present sufficient evidence to demonstrate a causal connection between her protected activity and the decision not to hire her, I will grant the Rose Tree defendants' motion for summary judgment.

As discussed in connection with Elskamp's Title VII and PHRA retaliation claims against the Penn-Delco defendants, Elskamp has provided no evidence that any of the Penn-Delco employees who spoke with Kinsler was aware that Elskamp had filed a PHRC complaint.[15] Nor has Elskamp provided any evidence that the Rose Tree defendants learned of her PHRC complaint from some other source. And in the absence of such evidence, Elskamp cannot carry her burden here of demonstrating that her filing of the PHRC complaint was a substantial or motivating factor in the Rose Tree defendants' decision not to hire her as a bus driver, and her retaliation claim against the Rose Tree defendants must therefore fail.[16] Accordingly, I will grant the Rose Tree defendants' motion for summary judgment as to this claim against them in count

---

[15] Although Elskamp's testimony as to Kinsler's statement regarding her conversation with Groer and a female employee at the Penn-Delco School District could not be considered in connection with the claims against the Penn-Delco defendants, Kinsler's statement to Elskamp that she spoke with Groer and a female employee—but not her repetition of what they said—would be admissible against the Rose Tree defendants under Rule 801(d)(2) as a statement of a party-opponent.

[16] Because Elskamp has failed to present sufficient evidence to demonstrate that her protected activity played any role in the decision not to hire her, I need not address the Rose Tree defendants' alternative argument that they would have made the same decision absent her protected activity.

16

IV.[17]

IV.   **CONCLUSION**

For the reasons set forth above, I will grant both the Penn-Delco defendants' and the Rose Tree defendants' motions for summary judgment as to all of Elskamp's remaining claims. An appropriate order accompanies this memorandum.

---

[17] In any event, the claim against the individual Rose Tree defendants—other than Kinsler—as well as the claim against the Rose Tree Media School District must fail.

As the individual defendants argue, the claim against them must fail because they had no involvement in the decision not to hire Elskamp. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d at 173 ("To impose liability on the individual defendants, [Elskamp] must show that each one individually participated in the alleged constitutional violation or approved of it."). Kinsler testified, for example, that she never forwarded Elskamp's application to the human-resources department (Kinsler Dep. at 37:6–8), and Elskamp testified that the school board never voted on whether to hire her (Elskamp Dep. at 173:19–174:3). Elskamp has pointed to no evidence suggesting that anyone other than Kinsler was involved in or approved of Kinsler's decision not to hire Elskamp—and indeed, Elskamp does not even address this argument in her brief.

Further, the claim against the school district must fail as a matter of law because Elskamp has presented no evidence that the deliberate actions of the school district, as opposed to the actions of one of its employees, were the "moving force" behind the decision not to hire her. *See Bd. of the County Comm'rs v. Brown*, 520 U.S. at 400 (explaining that a municipality cannot be held liable under section 1983 "unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights" (quoting Monell, 436 U.S. at 694)). Asserting that municipal liability may be imposed for a single decision by a municipal policymaker, *see Pembaur*, 475 U.S. at 480, Elskamp notes that Kinsler is the school district's transportation director and asserts that she acts with the authority of the school board. But Kinsler testified that it is the school board that actually hires an applicant. Kinsler testified that she makes hiring recommendations to the human-resources department; if a position is available and she thinks that an applicant is qualified for the position, she forwards the application to human resources. According to Kinsler, the human-resources department double-checks the candidate's credentials and references and then makes a recommendation to the school board, which must vote on whether to hire the candidate. (Kinsler Dep. at 9:20–10:2, 14:16–15–6.) Elskamp nonetheless tries to argue that Kinsler can be considered to have final policymaking authority for purposes of imposing section 1983 liability against the school district, noting that Kinsler also testified that neither the human-resources department nor the school board had ever overridden her recommendation and decided not to hire a candidate that she had recommended (*see id.* at 16:18–23). But this argument is unpersuasive.